NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0669n.06

No. 13-3423

**FILED**
Aug 27, 2014
DEBORAH S. HUNT, Clerk

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

LISA SHIVELY, on her own behalf and on behalf of )
her minor child other T.S., ESTATE OF JAMES )
SHIVELY, on behalf of Lisa A. Shively, Executrix )
originally named as James Shively, )
                                   )
        Plaintiffs – Appellees, )
                                   )
v. )
                                   )
GREEN LOCAL SCHOOL DISTRICT BOARD OF )
EDUCATION, )
                                   )
        Defendant, )
                                   )
and )
                                   )
MICHAEL NUTTER, WADE LUCAS, CINDY )
BROWN, MARK BOOTH, JEFF MILLER, JEFF )
WELLS, in their official and individual capacities, )
JOHN DOE 1 through 10, )
                                   )
        Defendants - Appellants. )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: **GRIFFIN, WHITE, and STRANCH, Circuit Judges.**

     **HELENE N. WHITE, Circuit Judge.** Defendant school officials appeal the district court's denial of their motion to dismiss on qualified immunity and state-law immunity grounds. The district court denied qualified immunity to all Defendants on Plaintiffs' Fourteenth Amendment substantive due process and equal protection claims on the ground that Defendants failed to prevent or respond to ongoing gender- and religious-based harassment and bullying, and

denied Defendants statutory immunity from state-law claims of negligence and malicious

conduct. We AFFIRM in part, REVERSE in part, and REMAND to the district court.

**I.**

The district court stated the following pertinent facts:

> Plaintiffs Lisa and James Shively filed this action under 42 U.S.C. § 1983 in November 2011 on their own behalf, and on behalf of their minor child, T.S. The eight-count Amended Complaint ([PID 119]) seeks declaratory, injunctive, and monetary relief against the Green Local School District Board of Education (also "Board of Education" or "Defendant Board"), Michael Nutter, Wade Lucas, Cindy Brown, Mark Booth, Jeff Miller, and Jeff Wells (also collectively "individual Defendants") for alleged violations of Plaintiffs' civil rights. Specifically, Plaintiffs allege Defendant Board and its employees failed to prevent or respond to gender- and religion-based bullying and harassment aimed at T.S., thereby violating Plaintiffs' constitutional rights, Title IX, and state law. Count I alleges a deprivation of Plaintiffs' substantive due process rights under the Fourteenth Amendment. Count II alleges a deprivation of Plaintiffs' equal protection rights under the Fourteenth Amendment. Count III is a First Amendment claim wherein Plaintiffs allege that T.S. was punished for exercising her right to identify herself as Jewish, a right Defendants failed to enforce. Count IV alleges that Defendants, by allowing religion-based bullying and harassment, violated T.S.'s right to the free exercise of her religion under the First Amendment. Count V alleges a claim under Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681 et seq. Count VI alleges that Defendant Board's failure to train its employees regarding bullying constitutes a violation of the Board's obligations, resulting in liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Count VII alleges a negligence state law claim against the individual Defendants. Finally, Count VIII alleges a state law claim of malicious purpose, bad faith, and wanton and reckless conduct against the individual Defendants.

*Shively v. Green Local Sch. Dist. Bd. of Educ.*, No. 5:11CV2398, 2013 WL 774643, at *1 (N.D.

Ohio Feb. 28, 2013).

The Shivelys allege that T.S. is Jewish, that few Jews attend Green Local School District,

PID 123, that the named Defendants are "responsible for the implementation of all official

governmental laws, policies, regulations, and procedures" governing the Green Local School

District, PID 121–23, and that the harassment and bullying faced by T.S. took the form of

"constant name-calling, harassment based on her religion, teasing and verbal intimidation, and

on several occasions, physical violence." PID 123. The district court observed that

bullying-physical, verbal, and online-went on for several years, including:

a) Students regularly said she would "rot in Hell" because she did not believe in Jesus Christ; she was regularly called a "dirty Jew" or "Hitler;"

b) Several times she was knocked into lockers while walking through the hallways of school;

c) She was tripped, shoved, hit, kicked, had her books knocked out of her hands on a regular basis;

d) In September, 2007, T.S. was stabbed in the leg with a pencil during class; T.S. had to be transported to an urgent-care center, where the tip of the pencil was removed from her leg with a scalpel;

e) In April, 2008, Mrs. Shively informed Defendant Wade Lucas, then the superintendent of schools, that she would keep T.S. out of school until the bullying situation was addressed; Mrs. Shively kept T.S. out of school for one week, but eventually brought her back to school when nothing was done to address the situation;

f) In September and October, 2008, T.S. was verbally harassed on a daily basis, called "a fucking Jew" by several boys as she got on the bus; the bus driver never disciplined the boys or filed any sort of report to the school district;

g) On October 14, 2008, two boys spat on T.S. on the bus[;]

h) In November, 2009, T.S. was assaulted by a boy in the choir room at school, causing T.S. to have to be taken to the hospital and to wear crutches for several weeks. After the incident, the boy who assaulted T.S. and others continued to verbally harass and threaten T.S., telling her they would break her crutch over her head;

i) In October, 2010, several students created a Facebook page, entitled, "If you think T.S. is a whore and needs to go back to 8th grade, join!" The mother of one of the girls who created the page posted comments on the page;

j) In January, 2011, two students at Green High School created a "kill list" which included T.S.'s name as a target for being killed or hurt. While school officials assured Mrs. Shively that the perpetrators would never be able to set foot in the high school again, one of the perpetrators was seen by T.S. in the cafeteria just three weeks after the incident;

> k) On August 24, 2011, the first day of the current school year, T.S. was helping with a "Club Fair," a program meant to showcase the various clubs students can join, when students began shouting "Jew" at her from across the cafeteria;
>
> l) On September 20, 2011, a female student approached T.S. in the cafeteria in front of other students and called T.S. a "whore," among other names;
>
> m) On September 30, 2011, T.S. endured an entire day of teasing and harassment from students between and during class.

*Shively*, 2013 WL 774643, at *1–2.

The Shivelys allege that all named Defendants knew of the ongoing harassment because of the several instances in which Lisa Shively notified school officials, police, and school guidance counselors.

> The defendants knew about the harassment because plaintiff Lisa Shively, T.S.'s mother, visited, e-mailed and called whichever school T.S. was attending at the time on numerous occasions to complain about the bullying, to ask that something be done, and to warn school officials that T.S. was depressed because of the constant harassment; on several occasions, Mrs. Shively contacted law enforcement authorities, including a resource officer who worked inside the school.

PID 125–26. The Shivelys further allege:

> Despite being told repeatedly about the bullying and harassment, defendants did nothing to stop or diminish the harassment, nor did they punish or discipline the perpetrators, despite the fact that the defendants were told by Lisa Shively and T.S. who the perpetrators were and despite the fact that the school district has a clear policy prohibiting bullying, harassment and discrimination based on religion.

PID 126. On October 3, 2011, Mrs. Shively informed school officials that T.S. could no longer attend Green High School because of the bullying and the school's failure to respond to it. PID 125.

Defendants filed a motion for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and moved to dismiss the Shivelys' personal claims for lack of subject-

matter jurisdiction. PID 156–200. The district court dismissed the parents' indirect constitutional claims, Title IX claim, and First Amendment claims. *Shively*, 2013 WL 774643, at *4, 6–8. The court did not dismiss T.S.'s due process and equal protection claims, or her state-law claims. *Id*. at *4–6, 9–10. The district denied qualified immunity and state-law immunity to all individual Defendants with respect to all remaining claims. *Id*. at *9–10. The court also declined to dismiss Plaintiffs' *Monell* claim for violations of the Fourteenth Amendment, but noted that "[p]laintiffs concede that if any of their claims set forth in Counts I through IV fails [sic] on the merits at this stage, then no corresponding *Monell* claim can survive." *Id*. at *8–9. Defendants timely filed this interlocutory appeal, challenging the district court's denial of qualified immunity and state-law immunity.

## II.

This court reviews de novo a district court's decision on a motion for judgment on the pleadings as well as a motion to dismiss under Rule 12(b)(6), *Jasinski v. Tyler*, 729 F.3d 531, 538 (6th Cir. 2013), and construes the complaint in a light most favorable to the plaintiff, accepting all factual allegations as true. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A plaintiff must allege facts that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

### III.

Defendants first argue that the Shivelys failed to plead with particularity facts alleging each administrator violated a constitutional or statutory right. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. Because vicarious liability is inapplicable to § 1983 claims, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Id.* The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 55, 562–63 (6th Cir. 2011) (citing *Iqbal*, 556 U.S. at 662) ("No heightened pleading requirement applies.").

Defendants argue that the Shivelys fail to specifically allege that Defendants violated T.S.'s rights to due process and equal protection, and the district court erred when it failed to review the allegations against each Defendant and instead summarily denied immunity to all.

First, in *Iqbal*, the Supreme Court discussed its subject-matter jurisdiction to address the denial of a motion to dismiss under the collateral-order doctrine, holding that appellate jurisdiction is not confined to the ultimate issues relevant to the qualified immunity defense itself, but may be based on the complainant's failure to state a claim. *Iqbal*, 556 U.S. at 673 (citing *Hartman v. Moore*, 547 U.S. 250, 257, n.5 (2006)). The Court opined that whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided

in isolation from the facts pleaded, holding that the sufficiency of Iqbal's pleadings was both "inextricably intertwined with" (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 51 (1995)) and "directly implicated by" the qualified immunity defense. *Iqbal*, 556 U.S. at 673 (citing *Hartman*, 547 U.S at 257, n.5); *see also Heyne*, 655 F.3d at 561, 565 (reviewing whether Heyne's complaint adequately and separately alleged a plausible constitutional violation by school officials claiming qualified immunity).

Second, *Iqbal* explained that to survive a motion to dismiss on the grounds of qualified immunity, a plaintiff must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. 566 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for misconduct alleged. *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

In the instant case, the facts alleged in the complaint are sufficient to plausibly suggest that the school official Defendants knew about the ongoing harassment and bullying faced by T.S and failed to act. Defendants Wade Lucas, Mark Booth, and Michael Nutter are specifically alleged to have had knowledge of and to have made decisions regarding complaints of harassment. Defendants Cindy Brown, Jeff Miller, and Jeff Wells served as Principal of Green Intermediate School, Principal of Green Middle School, and Assistant Principal of Green Middle School, respectively. The complaint alleges that Defendants "knew about the harassment because plaintiff Lisa Shively, T.S.'s mother, visited, e-mailed and called whichever school T.S. was attending at the time on numerous occasions to complain about the bullying, to ask that something be done, and to warn school officials that T.S. was depressed because of the constant

harassment; on several occasions, Mrs. Shively contacted law enforcement authorities, including a resource officer who worked inside the school." PID 126. Defendant principals' specific roles were such that they would likely have known based on the factual allegations. The Shivelys also allege that Defendants "knew or should have known about this constant harassment," PID 125, and allege that during 2007-2008, the guidance counselor (not a Defendant) was informed. PID 126. The Shivelys further allege that "defendants" did nothing to stop the bullying "despite being told repeatedly about the bullying." PID 126. Further, it is a fair inference that the appropriate principals were aware of the ongoing harassment and bullying when, in September, 2007, T.S. was allegedly stabbed in the leg with a pencil during class and transported to an urgent-care center, and, in November of 2009, T.S. was allegedly assaulted in the choir room and again taken to the hospital, and later threatened by the same boy who said he would "break her crutch over her head." PID 124.

Given the number and variety of ways the Shivelys allege they contacted school officials, the Shivelys notification of police, medical care professionals, and the guidance counselor, and the Superintendent's knowledge of the ongoing harassment, the complaint plausibly alleges that Brown, Miller, and Wells, as the Principals and Assistant Principal of schools attended by T.S., knew about the ongoing student-on-student bullying and, given their positions of authority, were involved in making decisions regarding how it would be addressed. This conclusion is also supported by the procedural posture of this case, where litigation has continued during the pendency of this appeal and Brown, Miller, and Wells are proper Defendants before this court on the Shivelys' state-law claims. We conclude that the district court did not err in finding that the Shivelys' complaint meets the standard necessary to comply with Rule 8. *See Iqbal*, 556 U.S at 683–84.

**IV.**

Defendants argue they are entitled to qualified immunity on the Shivelys' due process and equal protection claims. The defense of qualified immunity shields government officials performing discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (internal quotation marks and citations omitted). This standard requires courts to examine the right asserted "at a relatively high level of specificity, and on a fact-specific, case-by-case basis." *O'Malley v. City of Flint*, 652 F.3d 662, 668 (6th Cir. 2011) (internal quotation marks and alterations omitted).

This court follows a three-step analysis when reviewing a district court's decision concerning qualified immunity. *See Gaspers v. Ohio Dep't of Youth Serv.*, 648 F.3d 400, 412 (6th Cir. 2011). First, we evaluate whether the facts demonstrate that a constitutional violation has occurred. *Id.* (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010)). Second, we determine whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Id.* Third, we consider whether the plaintiff has offered-here, by allegation in the complaint-sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights. *Id.* While conducting this review, we view the facts in the light most favorable to the plaintiff. *Id.* (citing *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)).

**A.**

Defendants argue that the Shivelys fail to state a substantive due process claim because Defendants did not affirmatively act to increase the risk of harm to T.S.  *See Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (officers who came upon and failed to stop an illegal drag race did not affirmatively act or increase risk of danger to plaintiff).

As a general rule, the Due Process Clauses of the Fifth and Fourteenth Amendments "confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Generally, substantive due process does not impose a constitutional duty on a school to protect students from harm inflicted by private actors, such as their classmates.  *See id*. at 195.  A state-created danger exception applies where a state actor "creates a dangerous situation or renders citizens more vulnerable to danger."  *Jasinski*, 729 F.3d at 538–39 (citing *Butera v. Dist. of Columbia*, 235 F.3d 637, 648–49 (D.C. Cir. 2001)).

> [A] plaintiff may bring a substantive due process claim by establishing (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large; and (3) the requisite state culpability to establish a substantive due process violation.

*Id*. (quoting *Schorder v. City of Fort Thomas*, 412 F.3d 724, 728 (6th Cir. 2005)).  In determining whether an affirmative state act increased the risk of harm to an individual, the question is whether the individual was safer before the state action than after it.  *Id*. at 539.[1]

---

[1]Defendants contend that Superintendent Nutter should be immune from bullying claims arising before he was hired by the District, but there is no evidence in the record indicating when he was hired.  This argument should be addressed to the district court on remand.

Defendants correctly argue that this court does not find a state-created danger where a victim would have been in the same or greater danger had the officials not acted. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 466 (6th Cir. 2006). In *McQueen*, a first-grade student shot another child in his class while his teacher was out of the room, twenty-seven feet down the hall. *Id*. at 463. This court opined that leaving the students unsupervised was not an affirmative act that increased the risk of violence because the danger was created by the perpetrator's presence in the room with the victim, and there was no guarantee that had the teacher been in the room, the perpetrator would have been discouraged from shooting or the teacher could have prevented the shooting. *Id*. at 465–66. However, this court distinguished *McQueen* from an Eighth Circuit case where a school employee suspected the occurrence of a sexual assault and "placed the boys in the shower together [the next day] to confirm his suspicions," *id*. at 467 (citing *Dorothy J. v. Little Rock Sch. Dist*., 7 F.3d 729 (8th Cir. 1993)), explaining that "[s]imply walking out of the room without any inkling that the [perpetrator] had a gun is different both in degree and kind." *Id.*

Although other school harassment cases from this Circuit granted immunity to defendants on state-created danger claims, in each case the defendants remedied student-on-student violence. *See Pahssen v. Merrill Cmty. Sch. Dist*., 668 F.3d 356, 367 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 282 (2012) (finding school did not increase danger to plaintiff by telling the perpetrator to stop sexually harassing her); *S.S. v. E. Ky. Univ*., 532 F.3d 445, 455–56 (6th Cir. 2008) (holding that plaintiff's substantive due process right was not violated where the school took affirmative steps to address incidents of harassment involving S.S.—specifically, meeting with students, communicating with parents, and disciplining the offending students); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 512 (6th Cir. 1996) (defendant school officials were entitled to

qualified immunity on student's due process claim where they reported allegations of sexual abuse by teacher to DHS, removed the perpetrator from student contact, and closely supervised the perpetrator). But none of these cases addressed a claim in which school officials took such limited action in the face of a pattern of bullying and violence targeted at one student. Here, Defendants' alleged decision not to enforce rules against bullying or punishments for bullying gave students license to act with impunity. We decline to establish a standard in which "[d]ereliction of duty becomes a school's best defense," particularly in cases such as this where it "enabl[es] a pattern of physical abuse to persist," *Morrow v. Balaski*, 719 F.3d 160, 196 (3d Cir. 2013) (Fuentes, J. dissenting), and would reasonably be expected to embolden them to continue to escalate their abuse.

In any event, even assuming there was a state-created danger, reasonable officials would not have believed that their conduct was unlawful based on clearly established law. Defendants correctly argue that federal cases addressing the state-created danger doctrine have not previously found school officials liable for student-on-student harassment. Although these cases are distinguishable, the fact remains that at the time Defendants violated T.S.'s substantive due process right, it was not clearly established that school officials violate due process by failing to address student-on-student harassment. Accordingly, we reverse the district court's denial of qualified immunity for violations of T.S.'s substantive due process right.

**B.**

The Shivelys allege that T.S. was deprived of an equal education opportunity as a result of religion-based bullying and harassment known to Defendants, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or

(3) intentionally treat one individual differently from others similarly situated without any rational basis. *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). Here, the Shivelys argue that T.S. was harassed because she was Jewish and because of her gender.

> [T]o demonstrate a violation of the Fourteenth Amendment's Equal Protection Clause, [the Shivelys] must demonstrate the defendants' [gender-and-religion-based] discriminatory intent with respect to their response to the student-on-student harassment. *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 139–40 (2d Cir. 1999). Defendants must have been deliberately indifferent to the allegations of student-on-student [gender-and religion-based] harassment.

*Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 618 (6th Cir. 2012) (citing *Gant*, 195 F.3d at 139–40). "We agree with other circuits that have considered [student-on-student harassment] that the plaintiffs must show either that the defendants intentionally discriminated or acted with deliberate indifference." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir. 2003) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996); *Gant*, 195 F.3d at 140); s*ee also Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1249–51 (10th Cir. 1999) ("[S]upervisory municipal employees may be held liable under the Fourteenth Amendment for deliberate indifference to the discriminatory conduct of third parties."); *Schroeder ex rel. Schroeder v. Maumee Bd. of Educ.*, 296 F. Supp. 2d 869, 874 (N.D. Ohio 2003) (Plaintiff must show either that the defendants intentionally discriminated against him or acted with deliberate indifference) (citing *Nabozny*, 92 F.3d at 454).

The standard for deliberate indifference "announced by the Supreme Court is a 'clearly unreasonable response in light of the known circumstances.'" *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S.

629, 648 (1999)).[2] These claims do not require proof that "the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken maliciously or sadistically for the very purpose of causing harm." *Williams*, 455 F. App'x at 619 (citing *Gant*, 195 F.3d at 141).

Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009), is instructive. In that case, this court declined to grant qualified immunity to school officials where, as here, an individual student suffered bullying that was "severe and pervasive" and "lasted for years" where the response taken by the officials was inadequate "to deter other students from perpetuating the cycle of harassment." *Id*. at 447–48. This court held that "a reasonable jury certainly could conclude" that "the school district's standard and ineffective response to the known harassment became clearly unreasonable." *Id*. at 449. "We cannot say that, as a matter of law, a school district is shielded from liability if that school district knows that its methods of response to harassment, though effective against an individual harasser, are ineffective against persistent harassment against a single student." *Id*. at 448; *see also Vance*, 231 F.3d at 262–63 (declining to grant qualified immunity because once school knew its response to ongoing harassment of female student was inadequate "it was required to take further reasonable action in light of the circumstances to avoid new liability."); *cf Williams*, 455 F. App'x at 619 (holding school officials were not deliberately indifferent where they made extensive efforts to combat racial harassment, including notifying police, holding a student assembly, meeting with the NAACP, discussing parents' concerns, and hiring management consultants).

---

[2]The deliberate indifference standard used in these cases is "substantially the same" as the deliberate indifference standard applied by the Sixth Circuit in Title IX cases. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist*., 400 F.3d 360, 369 (6th Cir. 2005).

Here, the Shivelys' allegations amply set forth facts sufficient to establish the requisite intent or indifference. Defendants failed to enforce the school policy on harassment. It is well settled law that departures from established practices may evince discriminatory intent. *Nabozny*, 92 F.3d at 455 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977)). Further, Lucas acted as Superintendent of Green Local School District and was informed in April 2008 of instances of bullying so severe that Mrs. Shively removed T.S. from school for one week in an effort to have the situation addressed, but nothing was done. PID 124. Defendant Mark Booth, the Principal of Green Intermediate Schools, was told on several occasions of incidents that occurred between 2008 and 2009 and not only failed to assist T.S., but suggested that T.S. fight the boy bullying her and that she enjoyed the attention. PID 126. Defendant Nutter, as Superintendent of Green Local School District, did nothing to address the escalating harassment of T.S. until after the Shivelys removed T.S. from the school district. In addition to these specific allegations, the Shivelys allege that Lisa Shively called, visited, and emailed whichever school her daughter attended at the time of each incident of harassment and notified local medical care professionals, police, and school guidance counselors. They further allege that Defendants "were aware" of the ongoing harassment and make allegations regarding Defendants' obligations to enforce disciplinary rules. Further, as discussed by the district court, a perpetrator who was supposedly expelled for authoring a "kill list" with T.S.'s name was seen on school grounds only three weeks later.[3] Taking the alleged facts as true, Defendants were aware of the ongoing harassment that occurred while T.S. attended their schools but did nothing to address the situation. As in *Patterson*, Defendants cannot be shielded from liability where they took meager steps they knew to be ineffective to address severe and pervasive harassment

---

[3]It is not clear from the complaint which school official assured the Shivelys that the "kill list" perpetrator would not be permitted to return to school.

that went on for years. Accordingly, the Shivelys have adequately pled that Defendants violated T.S.'s right to equal protection.

The equal protection right to be free from student-on-student discrimination is well-established. *See Williams*, 455 F. App'x at 619; *Murrell*, 186 F.3d at 1250–52; *Flores*, 324 F.3d at 1135. It is difficult to imagine how any school administrator could think he would not be liable for allowing unregulated religious and gender-based persecution that spanned a four-year period. In light of the case law, the Shivelys have pled facts that show Defendants were objectively unreasonable in failing to address their complaints of student-on-student harassment and are not entitled to qualified immunity on the Shivelys' equal protection claim.

## V.

Finally, the Shivelys allege state-law claims of negligence and/or gross negligence and malicious purpose.[4] In order to establish a claim of negligence, a plaintiff must show: 1) defendant owed him a duty; 2) that duty was breached; 3) and that breach proximately caused plaintiff's injury. *Titus v. Dayton Bd. of Ed.*, No. 17920, 2000 WL 84649, at *2 (Ohio Ct. App. 2000).

The individual Defendants claim statutory immunity. "R.C. 2744.02(A) provides that as a general rule a political subdivision is not liable in tort for injuries to persons or property that occur in connection with the performance of a governmental or proprietary function." *Marcum*

---

[4]Ohio courts have held that the defenses and immunities under Ohio Rev. Code Ann. § 2744.03(A) do not provide "a direct way to establish liability." *Logan v. Sycamore Cmty. Sch. Bd. of Educ.*, No 1:09-CV-00885, 2012 U.S. Dist. LEXIS 77474, at *20–21 (S.D. Ohio June 5, 2012) (citing *Wright v. Mahoning Cnty. Bd. of Comm'rs*, 2009 Ohio 561, P32 (Ohio Ct. App. 2009)). Thus, the Shivelys cannot bring an independent claim for malicious purpose.

*v. Talawanda City Sch.*, 670 N.E.2d 1067, 1069 (Ohio Ct. App. 1996).[5]   "R.C. 2744.02(B)(4) . . .

grants an exemption from immunity for injuries resulting from the negligence of political

subdivision employees."   *Aratari v. Leetonia Exempt Village Sch. Dist.*, 7th Dist. No. 06–CO–

11, 2007-Ohio-1567, at *15 (Ohio Ct. App. 2007).   Under § 2744.03(A), school administrators

are immune from liability in personal-injury suits.   One exception to this rule is when the

employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or

reckless manner.   Ohio Rev. Code Ann. § 2744.03(A)(6).

The Shivelys allege that Defendants acted wantonly and/or recklessly and argue that

generally, the issue of malice, bad faith, and wanton or reckless behavior is for the jury.   *See*

*Fabrey v. McDonald Vill. Police Dep't*, 639 N.E.2d 31, 35 (Ohio 1994).   A plaintiff is not

required to affirmatively demonstrate an exception to immunity at the pleading stage because

that would require the plaintiff to overcome a motion for summary judgment in his complaint.

Instead, a plaintiff is only required to allege a set of facts which, if proven, would plausibly allow

him to recover.   *See Mohat v. Horvath*, 2013-Ohio-4290, ¶ 29 (Ohio Ct. App. 2013).

According to the Ohio Court of Appeals:

One acts with a malicious purpose if one willfully and intentionally acts with a
purpose to cause harm.   *Piro v. Franklin Twp.*, [656 N.E.2d 1035, 1041
(Ohio Ct. App. 1995)].   Malice includes "the willful and intentional design to do
injury, or the intention or desire to harm another through conduct which is
unlawful or unjustified." [*Shadoan v. Summit Cnty. Children Serv. Bd.*, 2003-
Ohio-5775, at ¶ 12 (Ohio Ct. App. 2003) (internal quotations omitted.)].   Bad
faith is defined as a "dishonest purpose, moral obliquity, conscious wrongdoing,
or breach of a known duty through some ulterior motive or ill will." [*Lindsey v.
Summit Cty. Children Services Bd.*, 2009-Ohio-2457, at ¶ 16 (Ohio Ct. App.
2009) (internal quotations and citations omitted)].   A person acts wantonly if that
person acts with a complete "failure to exercise any care whatsoever." *Fabrey v.
McDonald Police Dept.*[, 639 N.E.2d 31, 35 (Ohio 1994)].   One acts recklessly if

---

[5]A school district is a political subdivision of the State of Ohio.   Ohio Rev. Code Ann.
§ 2744.01(F).   We therefore understand the malicious purpose allegation to refer to the absence
of statutory immunity.

> one is aware that one's conduct "creates an unreasonable risk of physical harm to another[.]" [*Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990), *abrogated on other grounds Anderson v. Massillon*, 983 N.E.2d 266 (2012) (internal quotations and citation omitted)]. Recklessness is more than mere negligence in that the person "must be conscious that his [or her] conduct will in all probability result in injury." *Fabrey*, [639 N.E.2d at 35].

*Spears v. Akron Police Dep't*, No. 24847, 2010 WL 625822, at *4 (Ohio Ct. App. Feb. 24, 2010)). "Distilled to its essence, and in the context of R.C. 2744.03(A)(6), recklessness is a perverse disregard of a known risk." *O'Toole v. Denihan*, 889 N.E.2d 505, 517 (Ohio 2008).

The question of recklessness turns on whether Defendants knew of and could foresee harm to a student and whether they took actions in response to the harassment. *See Aratari* 2007-Ohio-1567, at *32 (holding that school district was not reckless where a student with some behavioral problems assaulted a previously untargeted student without provocation); *Marcum*, 670 N.E.2d at 1070 (holding that teacher was immune from liability where students who previously worked well together were left alone and assaulted a member of their group); *Williams v. Columbus Bd. of Educ.*, 610 N.E.2d 1175, 1178–79 (Ohio. Ct. App. 1992) (holding the attack and rape of the plaintiff by the three male students were not foreseeable where the plaintiff was in an unsupervised classroom after school hours and the perpetrators, who had no history of committing criminal assault to the degree or of the nature that took place, were told to leave and seen walking toward the school exit prior to the assault); *Doe v. Big Walnut Local Sch. Dist. Bd. of. Educ.*, 837 F. Supp. 2d 742, 757–58 (S.D. Ohio 2011) (holding that defendants did not act with malice, bad faith, or wanton and recklessness where the school principal investigated incidents of bullying and devised a safety plan approved by the parents that apprised teachers of the harassment, adjusted the schedules of students involved in a fight with the plaintiff, and provided guidance counseling for the plaintiff each morning).

In the instant case, the Shivelys have set forth facts demonstrating that Defendants' actions were reckless under Ohio Rev. Code Ann. § 2744.03(A)(6). The Shivelys alleged that Defendants made the deliberate decision not to enforce school policies against bullying following several reports of harassment and violence against T.S., including a report that her name was on a "kill list," and only provided an alternative school placement after T.S. left the school district. The Shivelys further allege that although they were told the perpetrator of the "kill list" would not be permitted to return to the school, he was permitted back on campus three weeks later. In contrast to the cases cited above, the Shivelys have provided evidence that the harm to T.S. was not only foreseeable, but likely given the escalating attacks she faced and the degree to which she was singled out for harassment. This is not a case where school officials declined to enforce draconian punishments on a troubled student who later perpetrates an unforeseen act of violence; rather, it is a case about refusing to apply school policy to protect a targeted student enduring harassment and violence. At this stage of the proceedings, the Shivelys have pleaded facts that, if proven, entitle them to recovery, and Defendants are not entitled to state-law immunity. *See Wencho v. Lakewood Sch. Dist.*, 895 N.E.2d 193, 197 (Ohio. Ct. App. 2008) (holding the trial court properly denied defendants' motion for judgment on the pleadings based on immunity where school officials knew of series of assaults, the attackers were not disciplined, the school took no action to assist the victim, and school officials blamed the victim for his "inability to deal with anxiety and stress.").

## VI.

For these reasons, we AFFIRM the district court's denial of qualified immunity to all individual Defendants on the Shivelys' equal protection claim; AFFIRM the district court's denial of statutory immunity to all individual Defendants under the Shivelys' state-law claims;

REVERSE the district court's denial of qualified immunity to all individual Defendants on the Shivelys' substantive due process claim; and REMAND to the district court for further proceedings.

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

Although I agree with the majority in most respects, I respectfully disagree with my colleagues regarding two issues.

First, the majority finds no error with the district court's blanket denial of immunity to all six individual defendants. I disagree.

The Supreme Court has explicitly held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that *each* Government-official defendant*, through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). Similarly,

> "[t]his Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson,* 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant.

*Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 564 (6th Cir. 2011). The test, therefore, is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that each individual defendant's acts violated the plaintiff's clearly established constitutional right. *Id*. at 563–64.

The district court failed to separately analyze the constitutionality of each defendant's actions. Its failure to do so was error. *Id*. at 564. In the same vein, neither did the Shivelys "plead that each" individual defendant, "through [the individual defendant's] own . . . actions" violated the constitution. *Iqbal*, 556 U.S. at 676. The Shivelys did make specific allegations as to defendants Booth, Nutter, and Lucas (a school principal and two superintendents, respectively). The Shivelys' complaint alleges that these defendants had knowledge of T.S.'s

harassment and that they made decisions about the district's response to that harassment. However, the complaint is deficient regarding defendants Wells, Miller, and Brown. The complaint does not allege any instances where Wells, Miller, or Brown were informed about T.S.'s harassment or that they made any decisions about how to respond to that harassment.

The majority concludes that it is proper to allow claims against Wells, Miller, and Brown to proceed, despite the complaint's failure to make allegations regarding these defendants. I respectfully disagree. The majority reaches this conclusion on the theory that, because Wells, Miller, and Brown were administrators of the schools T.S. attended, it is reasonable to infer that they must have known about the harassment and made decisions in response to it. This, however, is precisely the type of inference that the law prohibits. *Heyne,* 655 F.3d at 564 ("We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and *we cannot ascribe the acts of all Individual Defendants to each individual defendant.*" (emphasis added) (citing *Lanman*, 529 F.3d at 684 and *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 512–15 (6th Cir. 1991)). For these reasons, I would hold that we should address the claims against Lucas, Booth, and Nutter, as they were properly pleaded. However, the claims as to Wells, Miller, and Brown should be dismissed because the Shivelys have not shown that they are entitled to relief against these defendants.

Second, although I agree with the majority that the district court properly concluded that Lucas, Booth, and Nutter are entitled to qualified immunity on the Shivelys' substantive due process claim, I write separately to emphasize that the majority does not hold that the Shivelys have established a substantive due process violation. Rather, it holds that, *assuming* the Shivelys did establish such a violation, the right at issue here was not clearly established. Therefore, the

majority's rather extensive discussion regarding whether the Shivelys have established a due process violation is unnecessary.

Moreover, in my judgment, the Shivelys could not establish a due process violation in any event. As the majority notes, generally "a State's failure to protect an individual against private violence . . . does not constitute a violation of the due process clause." *S.S. v. Eastern Kentucky Univ.*, 532 F.3d 445, 456 (6th Cir. 2008). A failure of the state to protect a citizen is only cognizable if the plaintiff can establish that the "state-created danger exception" is met. This exception is satisfied if the plaintiff can show: (1) an "affirmative act[] by the state which either create[s] or increase[s] the risk that an individual will be exposed to private acts of violence"; (2) a "special danger"; *i.e.*, that the state's actions "place[d] the victim specifically at risk, as distinguished from a risk that affects the public at large"; and (3) that the state "kn[ew] or should have known that its actions specifically endangered the individual." *McQueen v. Beecher Cmt'y Sch.*, 433 F.3d 460, 464–70 (6th Cir. 1999) (internal citations and quotation marks omitted).

Critical to the determination in this case is the first prong of the test—whether plaintiffs have alleged an "affirmative act[] by the state that either create[s] or increase[s] the risk that [T.S. would] be exposed to private acts of violence." *Id*. at 464. Indeed, the Shivelys were required to allege that defendants took some affirmative act, but ultimately, their theory of the case is precisely the opposite—that defendants *did not* act, and that their failure to act is what permitted T.S.'s harassment to continue.[1] The thrust of the Shivelys' allegations are that Booth, Nutter, and Lucas knew about the violence and harassment to which T.S. was subjected and

---

[1]The closest the Shivelys come to alleging an affirmative act is when they allege that Booth "told Mrs. Shively that T.S. should fight a boy who was bullying her." Whether this is enough to establish an affirmative act by Booth that increased the risk of danger to T.S. is questionable—even if we were to assume that this crosses the threshold from inaction to action (which is itself a generous assumption), the Shivelys do not allege that this "advice" from Booth actually placed T.S. in more danger than she was already.

failed to act. Repeatedly, the Shivelys assert that defendants are not entitled to qualified immunity because "defendants did nothing to stop" the violence and "fail[ed] to address" the violence. However, this court has specifically held that a "failure to act is not an affirmative act under the state-created danger theory." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). *See also Langdon v. Skelding,* 524 F. App'x 172, 176 (6th Cir. 2013) (holding no affirmative state action where "[t]he facts merely show that [the government] did not do enough to investigate the complaints of [child] abuse, and this is a mere failure to act"); *Jasinski v. Tyler,* 729 F.3d 531, 540 n.5 (6th Cir. 2013) (opining that the plaintiff's argument that the government's failure to provide her with previous child protective service complaints was the plaintiff's "least compelling argument for an affirmative state action"); *Schroder v. City of Fort Thomas,* 412 F.3d 724, 728–29 (6th Cir. 2005) (holding that the failure to respond to parents' complaints about the failure to enforce a residential speed limit was not an affirmative act); *Sheets v. Mullins*, 287 F.3d 581, 588–90 (6th Cir. 2002) (holding that the failure to pursue a domestic abuse call was not an affirmative act); *Weeks v. Portage Cnty. Exec. Offices*, 235 F.3d 275, 279 (6th Cir. 2000) (failing to call an ambulance for an injured citizen was not an affirmative act). Accordingly, I would also reverse the district court's judgment on the basis that plaintiffs failed to establish a violation of T.S.'s due process rights.

For these reasons, I respectfully dissent in part, but concur in the remainder of the majority's opinion.