RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1244-MR

LOANDREA DAHMER                                                                APPELLANT

v.                 APPEAL FROM WARREN CIRCUIT COURT
                   HONORABLE JOHN R. GRISE, JUDGE
                   ACTION NO. 21-CI-00414

WESTERN KENTUCKY UNIVERSITY;
ANDREA ANDERSON; TIMOTHY CABONI;
CHARLEY PRIDE; RANDALL BOARD; AND
BRIAN KUSTER                                                                      APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND MAZE, JUDGES.

MAZE, JUDGE: Loandrea "Andi" Dahmer (Dahmer) appeals from a summary

judgment of the Warren Circuit Court dismissing her individual negligence claims

arising from harassment while she was a student at Western Kentucky University

(WKU). We agree with the trial court that Appellees Caboni and Anderson were

entitled to qualified immunity from the negligence claims. We further conclude that Dahmer failed to state an actionable duty against Appellee Pride because those claims were precluded due to the federal court's prior dismissal of her claims against him based on the same duties. Hence, we affirm.

## I.      FACTS AND PROCEDURAL HISTORY

During the period at issue, Dahmer was a student at WKU, a public university principally located in Bowling Green, Kentucky. Beginning in 2015, she participated in the Student Government Association (SGA). Dahmer was elected president of the SGA during the 2017-2018 school year. As president, Dahmer appointed six women and one man to serve on her executive board.

During that school year, Dr. Charles L. "Charley" Pride (Pride) served as the SGA's faculty advisor. He also was WKU's Director of Student Activities, Organizations, and Leadership. In addition, Pride remained actively involved in his fraternity, Phi Delta Theta.

Dahmer alleged that she and other female members experienced disrespect and hostility from other male SGA members. She stated that this conduct started with male SGA members who refused to call female leaders by their titles and talked over the female executive council members. In September 2017, Dahmer approached Melanie Evans, WKU's Coordinator of Sexual-Assault

Services, to ask Evans to speak to the SGA about Title IX[1] and appropriate conduct. Evans asked Dahmer if she would like to make a formal complaint, but Dahmer declined.

In October, Evans gave a Title IX presentation during an SGA meeting. That same month, Dahmer alleged that an SGA and Phi Delta Theta member (Student 1) plagiarized a bill she authored. In response, Student 1 allegedly stormed into an SGA executive board meeting, called Dahmer a liar, and screamed at her, shouting a gender-based insult. Dahmer also alleged that male SGA members made unspecified gender-based comments toward her.

In late October, Andrea Anderson (Anderson), WKU's assistant general counsel and Title IX coordinator, contacted Dahmer, inquiring whether Dahmer had experienced inappropriate sex or gender-based behavior. Dahmer did not reply to Anderson's messages. Dahmer testified that, during this time, Pride made inappropriate comments to her in his office and acted protectively of Phi Delta Theta. Pride was also the subject of a separate, unrelated Title IX investigation by WKU beginning in the fall of 2017.

---

[1] Title IX is the most commonly used name for a portion of the 1972 Education Amendments to the Civil Rights Act of 1964. Title IX prohibits sex-based discrimination in any school or any other education program that receives funding from the federal government and is codified at 20 United States Code (U.S.C.) §§ 1681-1689.

The situation in the SGA escalated in January 2018 when several SGA members attempted to impeach Dahmer and another female executive board member. At one point, Student 1 referred to the situation in the SGA as "shitty," which Dahmer took as an insult to her. In February 2018, Dahmer was sent a screenshot of a private chat in the "GroupMe" messaging application. In that chat, Student 1 and another SGA and Phi Delta Theta member, Student 2, shared derogatory and hostile messages about Dahmer. The chat included messages from female students as well. Two days later, someone placed a note on Dahmer's car which stated, "go f*** yourself." Dahmer believed that an SGA member placed the note on her car and contacted campus police. A later investigation revealed that the message was left by a student with no connection to SGA, but who was displeased with Dahmer's parking.

After receiving the note, Dahmer met with her residence hall director, who then reported the situation to WKU's Title IX office. Dahmer specifically complained about the conduct of Student 1 and Student 2, as well as Pride's inappropriate and dismissive comments. On the Monday following the report, Dahmer met with Joshua Hayes, WKU's Equal Employment Office Director, regarding Pride. The next day, she met with Director of Student Conduct Michael Crowe, as well as Evans and Anderson.

Immediately after that meeting, WKU issued two no-contact orders prohibiting Student 1 and Student 2 from communicating with Dahmer. Dahmer alleges that they continued to attend meetings and sit outside of her office to intimidate her. WKU completed its Title IX investigation of Dahmer's complaint on March 8, 2018. The investigation concluded that Student 1's and Student 2's actions violated the Student Code of Conduct but did not violate Title IX because it was not sex or gender based. As a result of the investigation, Student 1 was forced to resign from the SGA and the no-contact orders remained in place. The investigation also concluded that Pride's conduct was inappropriate but was not a violation of Title IX. Based on this conclusion, Pride stepped down from his position as faculty advisor to the SGA.

In August 2018, Dahmer filed an action in the United States District Court for the Western District of Kentucky. In her complaint, she alleged that WKU violated Title IX and 42 U.S.C. § 1983 in its handling of her harassment claims. Dahmer asserted additional § 1983 claims against WKU President Timothy Caboni (Caboni), Anderson, and Pride. She also asserted claims against Caboni, Anderson, and Pride for negligence, negligent hiring, training, retention and supervision, and negligent infliction of emotional distress.

The matter eventually proceeded to summary judgment. The federal court held that: (1) WKU was not subject to liability under 42 U.S.C. § 1983; (2)

Caboni, Anderson, and Pride were entitled to qualified immunity for discretionary actions involving enforcement of Title IX; and (3) Dahmer failed to show that any violation by Pride involved a clearly established constitutional right of which a reasonable person would have known. The federal court declined to exercise supplemental jurisdiction over Dahmer's state-law claims. *Dahmer v. W. Kentucky Univ.*, No. 1:18-CV-124-DJH-LLK, 2021 WL 816914 (W.D. Ky. Mar. 3, 2021). Dahmer filed an appeal from this order, which is still pending before the Sixth Circuit Court of Appeals.

On March 3, 2021, Dahmer filed a complaint in Warren Circuit Court asserting claims against WKU, Caboni, Anderson, and Pride for violation of the Kentucky Civil Rights Act (KCRA), KRS[2] 344.145, and retaliation under KRS 344.280. Dahmer separately asserted claims against Caboni, Anderson, and Pride for negligence, negligent infliction of emotional distress, and negligent hiring, training and supervision. After submitting discovery taken in the federal case, the matter proceeded to the motions for summary judgment by WKU and the individual defendants.

On September 27, 2021, the trial court granted the motion and dismissed Dahmer's claims against WKU, Caboni, Anderson, and Pride. The court first held that Dahmer's KCRA claims were barred by claims preclusion because

---

[2] Kentucky Revised Statutes.

the federal court dismissed her Title IX and § 1983 claims on substantially the same grounds. The trial court next held that Caboni and Anderson are protected by qualified immunity on the negligence claims for discretionary acts in investigating Title IX claims. Finally, the trial court found that Dahmer failed to plead a sufficient breach of duty by Pride in her negligence claims. Dahmer now appeals from this order. Additional facts will be set forth below as necessary.

## II. ISSUES

As an initial matter, we note that Dahmer does not appeal from the trial court's dismissal of her KCRA claims against WKU, Caboni, Anderson, and Pride. Rather, she only appeals from the dismissal of her negligence claims individually against Caboni, Anderson, and Pride. Dahmer argues that the trial court erred in finding that Caboni and Anderson were entitled to qualified immunity for their actions to enforce and investigate WKU's Title IX policies. Dahmer further argues that the trial court erred in finding that she failed to identify an actionable breach of duty by Pride.

## III. FINALITY

Before we can address these issues, there is another matter which has come to this Court's attention in the process of preparing this appeal. On June 18, 2021, Dahmer filed an amended complaint which asserted negligence claims against Brian Kuster and Randall Bogard, alleging that they had knowledge of

Pride's conduct over the years but failed to report it. In response, WKU and the individual defendants filed a motion to dismiss the complaint. In the alternative, they requested that the claims against Kuster and Bogard be dismissed under the pending summary judgment motion.

The trial court did not specifically grant Dahmer's motion to file the amended complaint. But in its September 27, 2021, order granting summary judgment, the court listed Kuster and Bogard (as "Randall Board") as parties to the action. The order did not address Dahmer's claims against Kuster and Bogard. But the order specifically dismissed Dahmer's complaint, "amended complaint, and all causes of action thereunder[.]" Dahmer's notice of appeal named Kuster and Bogard (listed as "Randall Board") as Appellees.

Under the circumstances, we conclude that the trial court's order constitutes a final and appealable order disposing of all pending claims in the action below. The court's order also includes finality language required by CR[3] 54.02. Therefore, this Court has jurisdiction to address the merits of the appeal. We note, however, that Dahmer does not challenge the dismissal of the claims against Kuster and Bogard.

---

[3] Kentucky Rules of Civil Procedure.

## IV.   STANDARD OF REVIEW

We commence our discussion of these issues by reiterating the familiar and well-established standard by which appellate courts review a grant of summary judgment:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.  CR 56.03.  There is no requirement that the appellate court defer to the trial court since factual findings are not at issue.  *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992).  "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."  *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).  Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances."  *Steelvest*, 807 S.W.2d at 480, *citing Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985).  Consequently, summary judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor . . . ."  *Huddleston v. Hughes*, Ky. App., 843 S.W.2d 901, 903 (1992), *citing Steelvest*, *supra* (citations omitted).

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## V.   QUALIFIED IMMUNITY

As noted above, the first question on appeal is whether the trial court properly granted Caboni's and Anderson's motion for summary judgment based upon qualified immunity.  The application of immunity is a question of law, which

-9-

this Court reviews *de novo*. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006); *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). Generally, qualified official immunity is "immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions." *Patton*, 529 S.W.3d at 723 (quoting *Yanero v. Davis*, 65 S.W.3d 510, 521 (Ky. 2001)). "Qualified immunity applies only to the negligent performance of duties that are discretionary in nature." *Id.* at 723-24. In contrast, qualified immunity is not provided for the negligent performance of a ministerial act. *Id.* at 724.

The Court in *Patton* further explained that a ministerial duty is one that "requires only obedience to the orders of others." *Id.* In other words, a duty is ministerial "when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* "The point is that a government official performing a ministerial duty does so without particular concern for his own judgment" or, stated another way, "the act is ministerial 'if the employee has no choice but to do the act.'" *Id.* (quoting *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014)).

In contrast, discretionary acts are "good faith judgment calls made in a legally uncertain environment" and involve "personal deliberation, decision, and judgment[.]" *Yanero*, 65 S.W.3d at 522. Particularly pertinent to the issues in this

appeal is *Yanero*'s explanation of the proper application of the doctrine of qualified immunity:

> But when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am. Jur. 2d, *Public Officers and Employees*, § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority. *Id.* § 309; *Restatement (Second) Torts*, *supra*, § 895D cmt. g. An act is not necessarily "discretionary" just because the officer performing it has some discretion with respect to the means or method to be employed.

*Id.*

"A ministerial duty may involve ascertainment of facts, and an officer may be permitted some discretion with respect to the means or method to be employed[.]" *Patton*, 529 S.W.3d at 724 (internal quotation marks and citations omitted). But the focus is whether a government official performing a ministerial duty does so without particular concern for his or her own judgment. *Id.* In contrast, a duty is discretionary because it is "so situation specific, and because it requires judgment rather than a fixed, routine performance[.]" *Marson*, 438 S.W.3d at 299.

-11-

Dahmer takes the position that the enforcement of Title IX requirements is essentially a ministerial duty because it merely requires application and enforcement of established policies to certain conduct and behavior. However, the investigation of claims involving alleged student misconduct requires considerable discretion in how the investigation is conducted and judgment in determining whether the misconduct occurred. *See Turner v. Nelson*, 342 S.W.3d 866, 875-76 (Ky. 2011). Even when the duty to report is mandatory, a determination of whether that duty has arisen requires investigating the facts, weighing the credibility of the witnesses, and exercising judgment to discover if the alleged actions qualify as harassment. "The degree of discretion required is evident and clearly outweighs the ministerial duty of making a binary decision to report the incident or not." *Patton*, 529 S.W.3d at 728. Furthermore, the enforcement of general supervisory duties is often considered a discretionary function, particularly where the school officials are only responsible for investigating misconduct when brought to their attention. *Ritchie v. Turner*, 559 S.W.3d 822, 832 (Ky. 2018).

Dahmer maintains that Caboni and Anderson were willfully ignorant of the "red flags" surrounding the SGA and Pride. But as the trial court noted, there was no evidence that Caboni had any reason to know of what was occurring in the SGA prior to February 2018. Similarly, Anderson was aware of potential

issues in the SGA, but had no direct reason to investigate until Dahmer filed her complaint in February 2018.[4]  Consequently, we agree that determination of when to begin the Title IX investigation was ultimately discretionary in nature.

At that point, the burden then shifted to Dahmer to prove that Caboni and Anderson acted in bad faith.  *See Sloas*, 201 S.W.3d at 475-76.  WKU commenced its investigation in February 2018 upon receiving Dahmer's complaint.  WKU issued no-contact orders to Student 1 and Student 2 while the investigation was pending.  Dahmer complains that they continued to harass her, but she does not point to any evidence that WKU ignored complaints about violations of the orders.  Although Dahmer disagrees with the determination that no Title IX violation occurred, Student 1 and Student 2 were both found guilty of violations of the Code of Student Conduct.  Student 1 was required to resign from the SGA and both no-contact orders remained in effect.  In addition, Pride was required to step down as faculty advisor to the SGA.

The record does not disclose any bad-faith refusal to properly investigate the complaint or to enforce the requirements of Title IX.  Therefore, we agree with the trial court that Caboni and Anderson were entitled to qualified

---

[4] The trial court based this conclusion on the absence of any contrary evidence in the record, as well as the preclusive effect of the federal court's finding that neither Caboni nor Anderson had reason to know of the alleged discrimination and harassment in the SGA prior to February 2018. As noted above, Dahmer has not appealed from the trial court's conclusions regarding claim or issue preclusion.

immunity from the negligence claims. Having reached this conclusion, we need not address WKU's argument that Dahmer's negligence claims were subsumed or pre-empted by the KCRA or Title IX.

## VI.    NEGLIGENCE CLAIMS AGAINST PRIDE

On the other hand, Dahmer alleges that Pride had actual knowledge of the discrimination and harassment in the SGA. She contends that Pride not only failed to comply with his Title IX duties to report the conduct, but he also actively discouraged her from reporting the situation and he sought to protect the perpetrators. In rejecting this claim, the trial court stated that "Dahmer fails to explain what duty he owed her in his role as SGA faculty advisor and Director of Student Activities, Organizations, and Leadership. She likewise fails to explain how he breached that duty."

The existence of a duty is a question of law for the court, while breach and injury are questions of fact for the jury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Causation presents a mixed question of law and fact. *Id.* Dahmer argues that Pride had a duty to intervene and report the harassment under Title IX and WKU's written Title IX policies. While Dahmer properly identified these duties in her complaint, the controlling question is whether these duties form an actionable basis for negligence under the facts of this case.

The federal district court dismissed Dahmer's individual claims against Pride based on this same conduct, concluding as follows:

> The analysis differs as to Pride, since Dahmer claims that he had actual knowledge of her harassment in the fall of 2017, when he allegedly "witnessed and directly participated in the harassing behavior." Dahmer argues that "Pride was plainly incompetent and violated the law in . . . failing to intervene when [Dahmer] and her female peers were experiencing sexual harassment in SGA." Assuming Pride's inaction violated a constitutional right, Dahmer has not shown that this right was clearly established. "Only when 'existing precedent' places the rule at issue 'beyond debate' will we consider the law 'clearly established.'" [*Kesterson v. Kent State Univ.*, 967 F.3d 519, 524 (6th Cir. 2020)] (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Unless a reasonable official, confronted with the same facts, would know that the challenged actions violate the law, qualified immunity bars liability." *Id.* (*citing District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). Dahmer has not identified any precedent showing that a reasonable faculty member in Pride's shoes would know that failing to intervene in the behavior of the SGA members would give rise to an equal-protection claim. Dahmer points to two cases – *Patterson v. Hudson Area Schools* and *Shively v. Green Local School District Board of Education* – as clearly establishing "that Pride could be held liable for acting with deliberate indifferent [*sic*] to [Dahmer's] claim of harassment." (*citing Patterson*, 551 F.3d 438, 439 (6th Cir. 2009), *abrogated by Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960 (6th Cir. 2020); *Shively*, 579 F. App'x 348, 350 (6th Cir. 2014))[.] But *Patterson* – which dealt with a school board's response to gender discrimination – and *Shively* – which dealt with a school district's Title IX liability – do not "bear on the question at hand." *Kesterson*, 967 F.3d at 526 (holding that *Patterson* and *Shively* did not clearly establish law that "would warn a reasonable coach" about

-15-

a deliberate-indifference equal-protection claim where the coach – a mandatory reporter – had failed to report the plaintiff's rape allegation).  Dahmer has thus failed to show that any alleged violation by Pride "involved a clearly established constitutional right of which a reasonable person would have known," and Pride is therefore entitled to qualified immunity.  [*Brown v. Lewis*, 779 F.3d 401, 411-12 (6th Cir. 2015)].

*Dahmer v. W. Kentucky Univ.*, 2021 WL 816914, at \*11 (record citations omitted).

Here, the trial court dismissed Dahmer's KCRA claims, concluding that they were precluded because her Title IX and § 1983 claims were based on the same statutory and constitutional duties and arose from the same set of operative facts.  Since the federal court dismissed those claims, the trial court concluded that the doctrine of claim preclusion barred Dahmer from re-litigating those matters.  (Citing *Yeoman v. Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998)).  Likewise, any negligence claim against Pride would arise from the same duties under Title IX and would involve the same factual issues.  Dahmer cannot avoid issue preclusion by re-casting the duties from previously dismissed claims as negligence. Therefore, we conclude that the trial court properly granted summary judgment on her negligence claims against Pride.

## VII.  CONCLUSION

Accordingly, we affirm the summary judgment by the Warren Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:  BRIEF FOR APPELLEES:

Tad Thomas     Thomas Kerrick
Lindsy Lopez     Bowling Green, Kentucky
Louisville, Kentucky