NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0939n.06

No. 11-5979

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 23, 2012

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| SHAWNEE MATHIS, et al., | ) | |
| | ) | |
| _Plaintiffs-Appellees_, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| WAYNE COUNTY BOARD OF EDUCATION, | ) | |
| et al., | ) | O P I N I O N |
| | ) | |
| _Defendant-Appellant_. | ) | |

BEFORE:    COLE and KETHLEDGE, Circuit Judges; THAPAR, District Judge.[*]

COLE, Circuit Judge.  In the fall of 2008, the Plaintiffs' sons, John and James Doe, were subjected to sexual harassment by their middle school basketball teammates.  The harassment spanned from arguably innocent locker room pranks to acts that appeared to be sexually violent in nature.  Based on these acts, the Plaintiffs filed suit, alleging student-on-student sexual harassment in violation of Title IX.  After a three-day jury trial, the Plaintiffs prevailed and were awarded $100,000 each.  The Defendant, Wayne County Board of Education ("WBOE"), seeks to set aside this jury verdict.  WBOE contends that the district court erred in denying its renewed motion for judgment as a matter of law, following the jury verdict.  We AFFIRM.

---

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In the fall of 2008, John and James Doe—seventh graders at Waynesboro Middle School ("WMS")—made the boys basketball team. At the beginning and end of their basketball practices, the team members would use the gym locker room to get dressed in their workout clothing and prepare for practice. From the beginning of the season, the boys would roughhouse in the locker room, which often involved the eighth grade boys ganging up on the seventh graders. At the start of the 2008 season, a number of eighth graders subjected John and James, as well as other team members, to a game of "lights out," which involved turning off all the lights in the locker room, and then humping and gyrating on the seventh graders. *Mathis v. Wayne Cnty. Bd. of Educ.*, No. 1:09-0034, 2011 WL 3320966, at *2 (M.D. Tenn. Aug. 2, 2011). The eighth graders also played a game called the "blind-folded sit-up." The prank entailed convincing James that it was impossible to do a sit-up blind-folded, so that when James came to the end of the sit-up, one of the eight graders had placed his naked buttocks in front of James, which he hit with his blind-folded face. *Id.*

On October 22 or 24, the pranks grew more aggressive when a number of eighth graders on the team grabbed John, forced him to the ground, pulled his pants down and anally penetrated him with a marker. *Id.* at *3. John did not initially report this incident to his parents or the school because he felt threatened by the eighth graders. On October 26, David Sisk, the coach of the basketball team, learned of the "marker incident" from his step-daughter, who was also a student at WMS and had heard rumors of the incident at school. *Id.* Sisk spent the next few days trying to determine the accuracy of the report, but he did not report the allegations to either Principal Ryan Keaton, John's parents, or anyone else. *Id.*

After learning of the marker incident from her son on October 29, Plaintiff Shanwee Mathis met with Keaton to report the incident. *Id.* Keaton took the report, but informed Mathis that he could not take any formal disciplinary actions until the Director of Schools, Wanda Johnston, returned from out of town. *Id.* Keaton did cancel basketball practice for October 30 and 31. When Johnston returned on October 31, he met with Keaton, Mathis, and other school officials and determined that there was sufficient evidence supporting John's allegation to justify suspending the perpetrators from school for ten days. *Id.* The suspension began on November 3, and placed the suspended eighth graders in an alternative school and suspended them from the basketball team. *Id.*

On November 4, after learning from her son James of the blind-folded sit-up and lights out incidents, Tammy McGuire, along with another parent, met with Keaton to discuss their concerns of locker room misconduct. *Id.* According to McGuire, Keaton was not overly concerned about these incidents and viewed them as just a bad prank. Although Keaton did punish this conduct months later through a verbal reprimand, Keaton made no indication to McGuire that he would investigate this conduct and surprised McGuire with his apparent lack of concern. *Id.*

From November 4 through November 7, John and James were harassed at school, including students repeatedly making comments about John's sexuality, after learning about the marker incident. *Id.* The harassment escalated to the point where McGuire removed James from WMS on November 7, concerned that her son would not be safe, in light of the perceived lack of action from the school district. *Id.* at 4. On November 6, McGuire and two other parents met with Johnston and the Wayne County Schools' "Complaint Manager," to discuss the locker room incidents. *Id.*

McGuire described the manager's attitude as "very calloused," and, there again was no indication that the district was prepared to take prompt action. *Id.*

Starting on November 6, the school did take some action, seeking to prevent locker room misconduct. *Id.* Namely, the school required seventh and eight graders to use the locker room at different times, required the door to the locker room to be kept open while in use, required an extra coach to monitor the boys while in the locker room, required Sisk to monitor the team more closely, offered further instruction on bullying, and provided counseling. *Id.* The next day, the school issued Sisk a written reprimand for failing to report the marker incident. *Id.*

On November 17, the Disciplinary Hearing Authority ("DHA")—a committee comprised of high ranking school officials—met to discuss the marker incident. *Id.* Although the school officials were aware of the lights out and blind-folded sit-up incidents, Johnston did not raise the issues during the DHA meeting. *Id.* Keaton contends that those incidents were discussed at the DHA meeting, however there is no record of this discussion in the meeting minutes. *Id.* The DHA voted to add one day of suspension to the marker incident perpetrators and to reinstate them to the basketball team on January 1, 2009. *Id.* In doing so, the DHA rejected a proposal to suspend those students from the team for the remainder of the season. *Id.* The suspended students appealed the decision to the WBOE, which changed the reinstatement date to December 1, 2008. *Id.* After this decision, Mathis removed John from WMS. *Id.*

On July 14, 2009, Mathis and McGuire filed suit on behalf of their sons, alleging that their sons were subjected to student-on-student sexual harassment. *Id.* at *1. Mathis and McGuire filed suit against a number of defendants, and raising a variety of claims; however, when the case went

to trial, the only remaining claim was a Title IX claim against WBOE. *Id.* At the close of the Plaintiffs' case-in-chief, WBOE moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which was denied. WBOE renewed its motion at the close of all evidence, but the motion was again denied. At the conclusion of the trial, the jury found for Mathis and McGuire and awarded each $100,000 in damages. WBOE then renewed its motion for judgment as a matter of law under Rule 50(b) or, in the alternative, a motion for a new trial. The district court denied both motions and WBOE now appeals.

II.

We review a district court's denial of a renewed motion for judgment as a matter of law de novo. *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). "Judgment as a matter of law may only be granted if, when viewing the evidence in the light most favorable to the non-moving party, giving the party the benefit of all reasonable inferences, there is no genuine issue of material fact for a jury, and reasonable minds could come to but one conclusion in favor of the moving party. *Id.* To be granted relief under this high standard, therefore, WBOE must show that the evidence in favor of its position was so overwhelming that reasonable jurors could not have found for Mathis and McGuire. *See id.*

A claim of student-on-student sexual harassment under Title IX requires the plaintiff to establish the following elements against a covered entity: that "(1) the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the funding recipient had actual knowledge of the sexual harassment, and (3) the funding recipient was deliberately indifferent to the

harassment." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 258-59 (6th Cir. 2000).

WBOE's renewed motion for judgment as a matter of law alleged that Mathis and McGuire failed

to produce "sufficient evidence of deliberate indifference following actual notice." *Mathis*, 2011 WL

3320966, at \*6. A showing of deliberate indifference requires the plaintiff to prove that "the

recipient's response to the harassment . . . is clearly unreasonable in light of the known

circumstances." *Patterson v. Hudson Area Schs.*, 551 F.3d 428, 446 (6th Cir. 2009) (internal

quotation marks and citations omitted). WBOE alleges that Mathis and McGuire failed to present

evidence at trial that any sexual harassment occurred after WBOE had actual notice and, because the

harassment stopped, the Plaintiffs could not demonstrate the WBOE's response was clearly

unreasonable. *Mathis*, 2011 WL 3320966, at \*6.

As the district court correctly noted, there was ample evidence before the jury from which

reasonable jurors could have concluded that WBOE's response constituted deliberate indifference.

*Id.* at \*7-8. Additionally, the jury could have reasonably viewed the evidence of the marker incident

not as just horseplay gone awry, but rather as a serious incident of sexual assault, which requires a

punishment more severe than an eleven-day suspension from WMS and a month-long suspension

from the basketball team. Finally, as the district court noted, "the jury could have reasonably

concluded that any decision that returned the alleged perpetrators to the basketball team was clearly

unreasonable, given that John Doe would be subjected to interacting with these boys in close quarters

on a daily basis . . . ." *Id.* at \*8. Given the evidence at trial, therefore, the jury's conclusion that

WBOE acted with deliberate indifference could reasonably have been reached.

As for James, the testimony at trial suggested that WBOE took little to no immediate action to protect James from the two forms of harassment he endured—the blind-folded sit-up and lights out incidents. They jury was aware that WBOE did not conduct any substantive investigation of either incident, nor did it promptly punish the behavior. The testimony also indicated that the school officials concentrated their investigation on the marker incident, not the continuing behavior that affected James. Furthermore, the jury was cognizant of the fact that Sisk only received a light reprimand for his failure to report the marker incident, and the perpetrators of the blind-folded sit-up and lights out incidents received only a verbal reprimand. From this evidence, the jury could have reasonably concluded that WBOE's remedial steps were insufficient to provide James a safe environment, as further evidenced by his mother's decision to remove him from WMS. Because the jury may have reasonably concluded that WBOE's response was too little too late and was too delayed to help James, WBOE's renewed motion for judgment as a matter of law cannot prevail.

III.

The district court's denial of WBOE's renewed motion for judgment as a matter of law is AFFIRMED.