RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LAUREN KESTERSON,

                            *Plaintiff-Appellant*,

      *v.*

KENT STATE UNIVERSITY; KAREN LINDER,
individually; ERIC OAKLEY, in his official capacity,

                            *Defendants-Appellees*.

No. 18-4200

───────────────

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:16-cv-00298—Sara E. Lioi, District Judge.

Argued: October 23, 2019

Decided and Filed: July 23, 2020

Before: SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Ashlie Case Sletvold, THE CHANDRA LAW FIRM LLC, Cleveland, Ohio, for Appellant. Thomas R. Houlihan, AMER CUNNINGHAM CO., L.P.A., Akron, Ohio, for Appellee Kent State University. Lisa M. Critser, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee Karen Linder. **ON BRIEF:** Ashlie Case Sletvold, Subodh Chandra, Donald Screen, THE CHANDRA LAW FIRM LLC, Cleveland, Ohio, for Appellant. Thomas R. Houlihan, Jack Morrison, Jr., Richard P. Schroeter, Jr., AMER CUNNINGHAM CO., L.P.A., Akron, Ohio, for Appellee Kent State University. Lisa M. Critser, Reid T. Caryer, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee Karen Linder. Jack Morrison, Jr., AMER CUNNINGHAM CO., L.P.A., Akron, Ohio for Appellee Eric Oakley. Andrew T. Tutt, ARNOLD & PORTER KAYE SCHOLER LLP, Washigton, D.C., for Amici Curiae.

      The court delivered a PER CURIAM opinion. STRANCH, J. (pp. 11–17), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

PER CURIAM.  Lauren Kesterson, a student athlete at Kent State University, told her coach, Karen Linder, that Linder's son had raped her.  Linder never notified anyone at Kent State.  The university learned about the assault two years later when Kesterson made a complaint to the school's Title IX office.  An investigation of the complaint led to Linder's resignation.  Kesterson sued Kent State, Linder, and another coach, Eric Oakley, for violating the free-speech-retaliation protections of the First (and Fourteenth) Amendments, the equal-protection guarantees of the Fourteenth Amendment, and Title IX.  The district court granted summary judgment to the defendants.  We reverse in part and affirm in part.

I.

Lauren Kesterson started college at Kent State University in August 2012.  The university's softball coach, Karen Linder, recruited her to play on a scholarship for the school's Division I team.  A few weeks after she arrived, Kesterson met Linder's son, Tucker, also a freshman at Kent State.  The two became friends.  But later that year, in December 2012, Tucker allegedly raped Kesterson in her dorm room.  Kesterson told her family and a few close friends about the incident in September 2013.

At the conclusion of her sophomore year, May 2014, Kesterson met with Linder for an end-of-season interview.  When Linder asked how she was doing, Kesterson told Linder that Tucker had raped her.  The parties dispute who said what next.  Kesterson says she told Linder she did not want to bring criminal charges, while Linder says Kesterson told her not to tell anyone about the assault.  Kesterson also claims (and Linder denies) that Linder told her to "keep [this information] between the people who already know and not tell other people."  R.156 at 49.  All agree that Linder, a mandatory reporter under Kent State's Title IX policy, did not notify anyone, including the athletic director, any other administrator, or the Title IX office at Kent State, about Kesterson's claim.

Kesterson told several more Kent State employees over the next year: two assistant coaches, her team's academic counselor, and the executive director of Kent State's Women's Center. None of these employees, all mandatory reporters as well, notified Kent State's Title IX office.

In 2015, at the beginning of her senior year, Kesterson contacted the Title IX office herself. She met with Erin Barton, one of the school's deputy Title IX coordinators, and filed a formal complaint against Tucker and Linder. Barton started a confidential investigation. Two days later, Barton met with Linder, who acknowledged that she violated Kent State policy by not reporting Kesterson's claim. Two days after that meeting, Kent State's athletic director, Joe Nielsen, gave Linder the option to resign or be fired. Linder resigned. A week after Kesterson's report, Kent State confirmed that Tucker was no longer enrolled at the school.

In 2016, Kesterson sued Linder and Eric Oakley, Linder's interim replacement, for violating her constitutional rights, namely her free speech rights not to be retaliated against for reporting the alleged rape and her equal protection rights. She also sued Kent State for violating her rights under Title IX. The district court granted summary judgment to the defendants on all of Kesterson's claims. This appeal followed.

## II.

We review the district court's summary judgment decision with fresh eyes. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). If a jury could reasonably find for either party, the case must go to a jury trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And in making that call, we give all reasonable inferences from the record to the non-movant, Kesterson. *Id.* at 255.

*Constitutional claims against Linder.* Kesterson believes Linder violated her First Amendment right to speak freely and her Fourteenth Amendment right to equal protection of the law. Linder faces no liability unless she violated a constitutional right that is clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Only when "existing precedent" places the rule at issue "beyond debate" will we consider the law "clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That does not mean we need a case "directly on point." *Id.* A key

consideration is notice. Unless a reasonable official, confronted with the same facts, would know that the challenged actions violate the law, qualified immunity bars liability. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

Assessed in the light cast by this standard, one of Kesterson's constitutional claims succeeds at this stage and two fail as a matter of law.

Start with the successful claim, the First Amendment retaliation challenge. To show retaliation, Kesterson must establish (1) that the First Amendment protects her speech, (2) that she suffered an injury that would deter a person of "ordinary firmness" from continuing to speak out, and (3) that Linder's actions were motivated at least in part by Kesterson's speech. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585–86 (6th Cir. 2008).

Kent State concedes that the First Amendment protects Kesterson's sexual assault allegations. And factual disputes prevent us from resolving the remaining two elements one way or the other. Consider Linder's treatment of Kesterson after she told the coach that her son raped her and the impact these actions would have on a reasonable person. Linder stopped calling Kesterson by her nickname and chastised her in front of another coach for becoming emotional during a practice. Linder also removed Kesterson from her starting shortstop position in favor of a younger player and limited her playing time. Then there's the fact that Kesterson had to attend multiple events at the Linder home, where Tucker lived at the time. Kesterson claims Linder made her go even after Kesterson objected that she felt uncomfortable going there. Whether or not these actions would deter an ordinarily firm person from speaking out turns on a number of things: Is this what really happened? Is Kesterson or Linder more credible? How do the true facts line up with the dynamics of a player-coach relationship? *See Fritz v. Charter Twp of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). On the record so far, these are questions best answered by a jury rather than a panel of three judges.

The same holds true for Linder's motivation for treating Kesterson in this way. She did not report the allegation of assault against her son but notified the school about another softball player's report of abuse. Linder admitted that Kesterson's report made her worry about Tucker's reputation. Then there's Kesterson's allegation that Linder told her not to tell anyone else about

the incident. Maybe these realities taken together reveal a desire to punish Kesterson for speaking out. Or maybe they simply reflect a mother trying to protect her son. A factfinder must resolve the point.

None of this would matter, it is true, if the law Linder allegedly violated was not clearly established. But we think the case law, by 2014, had put beyond debate that a coach at a state university cannot retaliate against a student-athlete for speaking out by subjecting her to harassment and humiliation. For decades, employees at "state colleges and universities" have known that those institutions "are not enclaves immune from the sweep of the First Amendment." *Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) (per curiam) (quotation omitted). Students may exercise their First Amendment rights unless doing so would "materially and substantially disrupt" school operations. *See Healy v. James*, 408 U.S. 169, 189 (1972) (quotation omitted); *Hazelwood Sch. Dist. v. Kulhmeier*, 484 U.S. 260, 272 (1988). And school officials may not retaliate against students based on their protected speech. *See Papish* 410 U.S. at 670; *see also Kincaid v. Gibson*, 236 F.3d 342, 354 (6th Cir. 2001). More specifically, long before these events, our court explained that coaches could not retaliate against a player "for reporting improprieties." *Lowery v. Euveard*, 497 F.3d 584, 600 (6th Cir. 2007); *see also Seamons v. Snow*, 206 F.3d 1021, 1030 (10th Cir. 2000).

Based on these cases, a reasonable coach would have known at the time Linder acted that she could not retaliate against a student athlete for reporting a sexual assault. All that remains is for a jury to decide whether Kesterson can carry her burden of proof.

Linder objects that her actions against Kesterson were "inconsequential" and could not have deterred her because she told others about the alleged rape. Linder Appellee Br. 16. But a coach's view of how a player should react to her language and actions cannot by itself carry the day. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). That Kesterson told others what happened bears on the inquiry but is not dispositive. *See id.* It's not hard to think of situations in which players might tell others what a coach has done to them for moral support, not because they do not fear retaliation from the coach.

Linder adds that she had a legitimate reason for every decision she made about Kesterson, whether it's playing time, nicknames, criticism, or attendance at team events. *See King v. Zamiara*, 680 F.3d 686, 710 (6th Cir. 2012). Maybe so. But Kesterson does not have to prove that speech-related animus alone drove Linder's decisionmaking. All she has to do is show that Linder's "desire to punish" Kesterson motivated her decisions "in substantial part." *Johnson*, 308 F.3d at 603. She has done that, at least when it comes to sending the case to a jury.

Linder maintains that *Henley v. Tullahoma City School System*, 84 F. App'x 534, 541 (6th Cir. 2003), creates too much uncertainty about a coach's liability for First Amendment retaliation for the law to be clearly established. But *Henley* did not say that a coach would be spared liability for the types of actions Linder took. The decision indeed said a coach could face liability if a player's speech motivated a coach's decision. *Id.* at 541–42. That warning came to roost here.

Kesterson's First Amendment prior restraint claim, however, lacks a foundation in our precedents. A prior restraint is an "administrative" or "judicial order[]" that forbids speech in advance. *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019). The alleged restraint must impose a "legal impediment." *Alexander v. United States*, 509 U.S. 544, 551 (1993). Linder did nothing of the sort. At most, she told Kesterson not to tell anyone about the assault.

Kesterson also claims that Linder violated her Fourteenth Amendment right to equal protection of the law. She advances two theories for relief: a "deliberate indifference" claim and a "class of one" claim. For present purposes, the key issue in both is whether the law was clearly established. The district court didn't think so, and neither do we. No matter how Kesterson styles her claim, we have not found a case that would warn a reasonable coach about an equal protection claim in this setting.

Kesterson's arguments on this score are minimal. She does not discuss *any* class-of-one cases. And the two "deliberate indifference" cases invoked by her do not bear on the question at hand. *See Patterson v. Hudson Area Schs.*, 551 F.3d 438 (6th Cir. 2009); *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348 (6th Cir. 2014). *Patterson* dealt with a school district's Title IX liability. 551 F.3d at 444. And *Shively* concerned a school board's response to

reports of gender and religious discrimination, 579 F. App'x at 350, a case, by the way that was decided months after Kesterson spoke to Linder.

But wait, Kesterson responds, qualified immunity never protects a coach who violates a mandatory school policy. That is not true. Public officials "do not lose their qualified immunity merely because their conduct violates some . . . administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Kesterson offers no case to the contrary. She instead cites a few cases in which we denied qualified immunity because the tasks the employees failed to perform did not involve an exercise of discretion. But these cases do not stand for the broad proposition that the violation of a mandatory school policy necessarily violates a constitutional right and necessarily removes the employee's eligibility for qualified immunity. Consider the two cases: *Borretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991); *Morrison v. Lipscomb*, 877 F.2d 463, 468 (6th Cir. 1989). In each case, little discovery had occurred. And in each case, the plaintiffs' claims fell well within existing precedent, as we repeatedly emphasized. *Borretti*, 930 F.2d at 1153–55; *Morrison*, 877 F.2d at 468. They do not stand for the broad proposition that qualified immunity is denied whenever a school employee violates a mandatory duty, no matter whether the duty bears on a violation of a constitutional right or not and no matter whether the right was clearly established or not. Any such approach would overrule legions of decisions that make the point that the violation of a government policy does not by itself establish a constitutional violation. *See, e.g.*, *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015); *Latits v. Philips*, 878 F.3d 541, 553 (6th Cir. 2017); *Gravely v. Madden*, 142 F.3d 345, 349–50 (6th Cir. 1998); *Lavado v. Keohane*, 992 F.2d 601, 610 n.5 (6th Cir. 1993); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992).

*Title IX claim against Kent State*. Kesterson separately claims that Kent State violated Title IX in the way it handled her sexual assault report. "[I]n certain limited circumstances," *Davis v. Monroe County Board of Education*, 526 U.S. 629, 643 (1999), a "federally funded university may be directly liable under Title IX for its inadequate response to allegations of student-on-student harassment," *Doe v. Univ. of Ky.*, 959 F.3d 246, 250 (6th Cir. 2020). Schools face liability when they (1) have "actual knowledge" of sexual harassment (2) that is "so severe, pervasive and objectively offensive" that it deprives the student of "educational

opportunities or benefits" and (3) act with deliberate indifference to the problem. *Davis*, 526 U.S. at 650.

Kent State concedes that Kesterson suffered "objectively offensive" sexual harassment. That leaves two questions: Did Kent State know about the alleged rape? And did it act with deliberate indifference in responding to it?

Kent State learned about Kesterson's allegations when she reported them to the school's deputy Title IX coordinator in 2015. That's the case even though Kesterson told Linder and a few other Kent State employees before then. Only when an "appropriate person" at a school knows about sexual discrimination does the school have "actual knowledge." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 848 (6th Cir. 2016); *Hill v. Cundiff*, 797 F.3d 984, 971 (11th Cir. 2015). An appropriate person is someone who "at a minimum has authority to address the alleged discrimination . . . on the [school's] behalf." *Gebser*, 524 U.S. at 290.

Erin Barton was that person. She was Kent State's deputy Title IX coordinator and counts as an "appropriate person." She had the authority to take corrective actions on Kent State's behalf to remedy the sexual discrimination Kesterson faced.

Contrary to Kesterson's argument, the other employees she told lacked any similar powers. Yes, they could have aided her in getting access to helpful resources. And yes, they could have, and should have, reported her allegations to Kent State. But a university employee's ability to mitigate hardship or refer complaints does not make them an "appropriate person." *See Hill*, 797 F.3d at 971. Otherwise, every employee would qualify and schools would face a form of vicarious liability that Title IX does not allow. *See Davis*, 526 U.S. at 640–41; *Gebser*, 524 U.S. at 288.

A school acts with "deliberate indifference" when its reaction to sexual discrimination is "clearly unreasonable" in light of what it knew. *Davis*, 526 U.S. at 648. Assessed against this standard, Kent State did not act unreasonably. Kesterson told Barton about the alleged rape on August 24, 2015. Barton started an investigation immediately after Kesterson's report. Four

days later, Linder was forced to resign or face termination. And a week later, Kent State confirmed that Tucker was not enrolled for the upcoming semester.

Kesterson counters that we should not apply the "appropriate person" test here. But she argued the opposite below. That amounts to a forfeiture. *Harris v. Roadway Exp., Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). The argument is not persuasive anyway. She points out that in *Davis*, the case that articulated the standard for student-on-student harassment cases, the words "appropriate person" never appear. That's true, but that's because the school's actual knowledge wasn't at issue. *Davis* concerned whether a student could sue a school for its deliberate indifference to student-on-student sexual discrimination. 526 U.S. at 643. It adopted the elements of the test from *Gebser* (decided a year earlier), which dealt with a student's ability to sue a school when it acts with deliberate indifference to a teacher's harassment of a student. *See Davis*, 526 U.S. at 643, 650; *Gebser*, 524 U.S. at 290. *Gebser* of course discussed the "appropriate person" requirement for actual knowledge at length. 524 U.S. at 290. At no point did *Davis* suggest it disagreed with that analysis or that it had developed a new standard. Every mention of "actual knowledge" in the case is tied to district administrators, not school employees. *See Davis*, 526 U.S. at 647, 651, 654.

Every circuit to consider the question agrees that plaintiffs alleging deliberate indifference to student-on-student harassment must satisfy the "appropriate person" standard. *Hill*, 797 F.3d at 971; *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1247 (10th Cir. 1999). We have said the same in dicta. *Stiles*, 819 F.3d at 848. And in our prior cases where we did not comment on the point, the parties either did not dispute the school's knowledge or did not introduce *any* evidence related to knowledge. *See M.D. ex rel Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 776–78 (6th Cir. 2017); *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 363–66 (6th Cir. 2012); *Patterson* 551 F.3d at 445–46; *Winzer v. Sch. Dist. for City of Pontiac*, 105 F. App'x 679, 681 (6th Cir. 2004); *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000)

Even so, Kesterson says, it's wrong to think that Linder and the other employees don't count as "appropriate persons." But Kesterson offers no evidence that these individuals could act on Kent State's behalf. She instead says that the employees could have pointed her to school

resources, and they all had an obligation to report her allegations.  True.  But that doesn't make these errors in judgment or violations of school policy the actions of Kent State or failures to respond by Kent State.  An appropriate person is someone "high enough up the chain-of-command" that her decision constitutes the school's decision.  *Hill*, 797 F.3d at 971 (quotation omitted).  That was not Linder or any of the other employees.

Kesterson says that Kent State acted with deliberate indifference because its employees failed to follow the school's policy and made several mistakes during its investigation.  But these kinds of errors do not amount to deliberate indifference by the school.  *Davis*, 526 U.S. at 648; *Doe*, 959 F.3d at 252.

That leaves two loose ends.  Kesterson also sued Eric Oakley in his official capacity for violating her First Amendment rights.  But she's forfeited the claim because she barely discussed it in her briefs.  *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).  That does not suffice to preserve the claim.

Kesterson claims the district court abused its discretion when it refused to modify a scheduling order.  One of Kesterson's attorneys asked for a 3-month extension to the court's deposition schedule because she had a medical problem and Kesterson's lead attorney needed time to get up to speed on the case.  While courts should be sensitive to medical issues affecting the parties in a case, that does not free attorneys from responsibility for staying up to speed on a case or mean that trial courts should ignore the costs to the system and the parties of delaying discovery—a process that already takes too long and costs too much by too many measures to count.  Nor is it by any means clear how this ruling prejudiced Kesterson.  The district court did not abuse its discretion in rejecting the extension.

We reverse in part and affirm in part.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

JANE B. STRANCH, Circuit Judge, concurring in part and dissenting in part. I agree with the majority opinion that Kesterson stated a First Amendment retaliation claim but believe the same is true of her equal protection and Title IX claims. On those claims, I respectfully dissent.

I begin with Kesterson's student-on-student sexual harassment claim under Title IX. As the majority explains, a plaintiff must demonstrate that the school had actual knowledge of that harassment, meaning an "appropriate person" knew of it. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). The majority opinion defines an "appropriate person" as someone who has "the authority to take corrective actions on Kent State's behalf to remedy the sexual discrimination Kesterson faced." (Maj Op. at 8) That language is reflected in a number of Title IX cases across the nation, many of which have struggled with its application to student-on-student harassment claims. Those cases suggest that the standard for determining a school's actual knowledge in student-on-student cases is still developing. In my view, applying that standard here shows that Linder was an appropriate person.

The majority opinion relies on *Hill v. Cundiff*, 797 F.3d 948 (11th Cir. 2015), to conclude that Linder lacked the ability to take corrective action, and that "getting access to helpful resources" and "refer[ing] complaints" is not enough. (Maj. Op. at 8) But, as the *Hill* opinion itself proves, the standard is not to be applied so inflexibly. In considering whether a teacher's aide was an "appropriate person," the Eleventh Circuit examined the aide's position and authority to discipline students, and found that an aide "had to answer to a teacher, the assistant principals, and the principal, and [] was not high enough on the chain-of-command at [the school] for her acts to 'constitute an official decision by the school district itself not to remedy the misconduct.'" *Id.* at 971 (quoting *Floyd v. Waiters*, 171 F.3d 1264, 1264 (11th Cir. 1999)). Even for an aide, who may be only a student assistant to a teacher, the court examined the facts to determine whether she was an appropriate person. *See also Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1286–87 (11th Cir. 2003) (explaining that actual knowledge in student-on-

student harassment cases is a fact-intensive inquiry that must "examine how [the state] organizes its public schools, the authority and responsibility granted by state law to administrators and teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case").

Other circuit courts employing a corrective action standard apply it even more flexibly and consider it a question of fact for the jury to decide. Take, for example, the Eighth and Tenth Circuits, which have left open the possibility that various school officials, including teachers and coaches, can meet the notice standard. *See Plamp v. Mitchell Sch. Dist., No. 17-2*, 565 F.3d 450, 457 (8th Cir. 2009) (emphasizing that courts cannot "fashion a bright-line rule as to what job titles and positions automatically mark an individual as having sufficient authority or control for the purposes of Title IX liability," and holding "that school guidance counselors and teachers are [not] always without the authority necessary to institute corrective measures or lack sufficient control to take remedial action"). The Tenth Circuit has emphasized that "[b]ecause officials' roles vary among school districts, deciding who exercises substantial control [to establish actual knowledge] is necessarily a fact-based inquiry." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999) ("School districts contain a number of layers below the school board: superintendents, principals, vice-principals, and teachers and coaches, not to mention specialized counselors such as Title IX coordinators. Different school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether." (brackets omitted) (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997))). And the Fifth and Seventh Circuit do not even require that an official have authority to take corrective action. *See I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 372 (5th Cir. 2019) (finding that "it [was] indisputable that [the school district] had actual knowledge" of the harassment when the plaintiffs notified the *school counselor*, without considering whether such counselor could take corrective action); *see also Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014) (specifying that actual knowledge turns on what "school administrators" knew).

In applying the test it proposes, the majority opinion ignores the extensive record in drawing a quick and incorrect conclusion about Linder's authority to take corrective action.

Kesterson told Linder that Tucker Linder raped her. Linder was well aware of the difficulties Kesterson experienced—*e.g.*, needing counseling, struggling with schoolwork and her softball performance (on which her college scholarship was based), being "emotional" at practice, and raising concerns about attending events at Linder's home where pictures of her abuser were displayed. Linder was directly involved in many of these difficulties and had the authority to aid in remedying the harm resulting to Kesterson from these issues.

Linder was not just any coach, as the majority opinion suggests; she was the *head* varsity coach for the softball team and was involved in the day-to-day activities of the team members. Linder had control over Kesterson's schedule, training, and scholarship, and she could have taken measures to remedy the hardships Kesterson faced while attending practice and school. Her position enabled her to address the sexual harassment Kesterson reported to her—either directly or, as required, by reporting to even higher-level administrators. *See Mathis v. Wayne Cty. Bd. of Educ.*, No. 1:09-0045, 2011 WL 3320966, at *1-2, *aff'd*, 496 F. App'x 513 (6th Cir. 2012) (imposing liability based on actual knowledge by basketball coach rather than by higher-ranked school employees). A rational juror could find Linder to be an "appropriate person" to satisfy the notice standard discussed by the majority opinion.

Because the majority opinion's actual knowledge assessment failed to consider Linder's actions, it also inappropriately assessed the third prong, deliberate indifference. A school district that receives federal funds is liable for damages under Title IX if it remains "deliberately indifferent to known acts of harassment." *Patterson v. Hudson Area Schools*, 551 F.3d 438, 446 (6th Cir. 2009) (quoting *Vance v Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000)). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Vance*, 231 F.3d at 260 (quoting *Davis*, 536 U.S. at 645). To be deliberately indifferent, a school district's response to a sexual assault must be "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.

The record provides ample evidence to support a finding of deliberate indifference. First, it is disputed whether Linder imposed confidentiality on Kesterson during the 2014 exit interview or Kesterson sought to keep the assault confidential. Although she did not want to press criminal charges, Kesterson asserts that Linder never asked her if she wanted to file a

report with the Title IX office.  And while KSU emphasizes that it took Kesterson seventeen months to report the assault, Kesterson attributes her hesitation to the fact that Linder was her abuser's mother.  Kesterson also testified that she felt inclined not to press charges against Tucker Linder because "she didn't see how [she] could continue to play softball pursuing a rape case against [her] coach's son."

Second, KSU's sexual harassment policy designates all employees as mandatory reporters and requires them to report all instances of sexual misconduct to the Title IX coordinator or deputy coordinator.  The policy provides that "University departments may create individual reporting structures to facilitate prompt reporting and adequate response; however, all reports must ultimately be provided to the Title IX coordinator or deputy coordinators as quickly as possible."  (R. 164-8, KSU Policy Register 5-16.2(D), PageID 4463)  Linder was aware of these requirements—during this same time frame, she reported another student's sexual assault claim to the Title IX office—but did not report Kesterson's.  While a policy violation alone is not enough to demonstrate deliberate indifference, the jury may consider it in determining whether Linder sought to help Kesterson or was acting in her own interest.  Linder admitted that she was concerned about the "fallout" from Kesterson's report and the impact it would have on her son.  A reasonable juror could find that Linder's request to keep the assault confidential evidences deliberate indifference.

Other disputes of material fact remain.  Kesterson argues that when she returned to KSU for her junior year, she continued to experience additional hardships as a result of the assault.  Linder's behavior toward Kesterson changed; she no longer called her by her nickname, did not pay her much attention, and treated her as if she "wasn't a part of the team anymore."  Kesterson also testified that Linder "did everything she could to convince [her she] was no longer good at softball" and was indifferent to her success on the field.  Linder also limited Kesterson's playing time, took her out of the starting lineup for a short period, and moved her from her preferred position of short stop to second base.  After being "emotional" at a practice, Linder informed Kesterson that her behavior was inappropriate despite knowing the underlying circumstances for such behavior.

Kesterson also reported the assault to Barton at the Title IX office, who told Kesterson that she would issue no-contact orders within the first 24 hours and a formal notice to Linder and her superiors of the alleged misconduct.  Although there is a dispute about why these actions were not taken, Barton never issued the notice or the no-contact orders, and it is unclear whether she informed Kesterson of her decision not to do so.  The investigation continued for 137 days after Kesterson reported the incident to Barton and, during that time, she was told to keep all matters about the complaint and pending investigation confidential.

Construing the evidence in the light most favorable to Kesterson, a reasonable juror could find that KSU had actual knowledge of and was deliberately indifferent to Kesterson's hardships.  For these reasons, Kesterson's Title IX claim should not have been dismissed.

Turning to the equal protection claim, the majority opinion's conclusion that the law was not clearly established because it did not "warn a reasonable coach about an equal protection claim in this setting" is at odds with our case law.  (Maj. Op. at 8)  That conclusion means that the opinion also errs in hopscotching over the constitutional violation analysis.  Under our precedent, the "equal protection right to be free from student-on-student discrimination is well-established." *Shively v. Green Local Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 356 (6th Cir. 2014) (citing cases).  A student may prove an equal protection violation by showing that an official acted with deliberate indifference to her allegation of student harassment. *Id.* at 356–57 (collecting cases).  The standard of deliberate indifference is met by showing that "the recipient's response to [allegations of harassment] or lack thereof is clearly unreasonable in light of the known circumstances." *Williams v. Port Huron Sch. Dist.*, 455 F. App'x 612, 618 (6th Cir. 2012) (quoting *Vance*, 231 F.3d at 260).  I think the district court was correct in its well-reasoned opinion determining that, under the deliberate indifference framework, triable issues of material fact remain on Kesterson's equal protection claim.

On the second prong of qualified immunity, I agree with the majority that to determine whether a law is clearly established, we need not find a case "directly on point."  (Maj. Op. at 2)  The Supreme Court has recognized "'that officials can still be on notice that their conduct violates established law even in novel factual circumstances' and has 'rejected a requirement that previous cases be fundamentally similar' to the facts in a case to render qualified immunity

inapplicable." *Jackson v. City of Cleveland*, 925 F.3d 793, 823 (6th Cir. 2019) (quoting *Hope v. Peizer*, 536 U.S. 730, 741 (2002)). And we have noted that "'general statements of the law' are capable of giving clear and fair warning . . . even where 'the very action in question has not previously been held unlawful.'" *Id.* (brackets omitted) (quoting *Smith v. Cupp*, 430 F.3d 766, 776–77 (6th Cir. 2005)).

I disagree, however, with the majority opinion's dismissive approach to the two cases clearly establishing that Linder's conduct would violate Kesterson's constitutional right to equal protection. In *Patterson v. Hudson Area Schools*, 551 F.3d 438, 448 (6th Cir. 2009), we declined to grant qualified immunity to school officials where the student suffered bullying that was "severe and pervasive" and the officials' response was inadequate "to deter other students from perpetuating the cycle of harassment." *Id.* at 447–48. And in *Shively*, where the defendants "failed to enforce the school policy on harassment," we relied on *Patterson* and held that it was well established by 2011 that school officials' deliberate indifference to reports of student harassment violate a student's equal protection rights. 579 F. App'x at 357–58.

The majority distinguished *Patterson* on the basis that it involved a funding recipient's liability under Title IX. But we have already established that deliberate indifference in a § 1983 equal protection claim is "substantially the same" as demonstrating deliberate indifference in Title IX cases. *Stiles ex rel. D.S. v. Grainger County*, 819 F.3d 834, 852 (6th Cir. 2016) (quoting *William ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2009)). And the majority opinion's attempt to distinguish *Shively* because it dealt with gender and religious—as opposed to sexual—harassment is simply a distinction without a difference. The law is clear that the plaintiff need only offer evidence that she was subjected to peer harassment, regardless of its form, *id*. (citing cases), and then focus on "the recipient's response to [allegations of] harassment or lack thereof" in evaluating a deliberate indifference equal protection claim, *Williams*, 455 F. App'x at 618 (quoting *Vance*, 231 F.3d at 260). The conclusion that the law requires a match of the particulars of the harassment endured is not a part of the applicable legal standard.

Here a head coach learned that her son raped a student athlete and the coach intentionally ignored school policy mandating that she report the rape—a coach who had reported similar assaults not involving her family. We made clear in *Soper v. Hoben* that rape "obviously

qualifies as being severe, pervasive, and objectively offensive sexual harassment[.]" 195 F.3d 845, 855 (6th Cir. 1999). *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (recognizing that there "can be the rare 'obvious case,' where the unlawfulness of [an official's] conduct is sufficiently clear even though existing precedent does not address similar circumstances" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))). That is the end of the harassment inquiry. *See Jackson*, 925 F.3d at 823. And *Patterson* and *Shively* clearly established that Linder could be held liable for acting with deliberate indifference to Kesterson's claim of harassment. *See Patterson*, 551 F.3d at 448; *Shively*, 479 F. App'x at 358. Under our precedent, I think qualified immunity should be denied for Kesterson's equal protection claim.

For the foregoing reasons, I respectfully dissent as to the dismissal of Kesterson's equal protection and Title IX claims.